**CAROL MORSE, BECKY NELLOS,**
**SANDY MOROWITZ,** and
other similarly-situated individuals,

          Plaintiff,

v.

**ALPINE ACCESS, INC.**, and
**SYKES ENTERPRISES, INC.**,
Jointly and Severally as,

          Defendants.

Case No.:  5:17-CV-235[BKS/ATB]
HON. _____

JURY TRIAL DEMANDED

**COLLECTIVE AND CLASS ACTION COMPLAINT WITH JURY DEMAND**

      Plaintiffs, Carol Morse, Becky Nellos, and Sandy Morowitz, individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendants Alpine Access, Inc. and Sykes Enterprises, Inc. (hereinafter referred to as "Alpine," "Sykes" or  collectively as "Defendants"), and state as follows:

**INTRODUCTION**

      1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, Carol Morse, Becky Nellos, and Sandy Morowitz (hereinafter referred to as "Plaintiffs"), individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., New York wage and hour laws, Illinois wage and hour laws, and breach of contract under the common law.

2. Plaintiffs were employed by Defendants as hourly at-home customer service representatives (AHCSRs).

3. The U.S. Department of Labor recognizes that call center jobs, like those held by Defendants' AHCSRs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses, which are prevalent in the industry.

4. One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

5. More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

6. Defendants failed to pay Plaintiffs and all similarly situated employees for their pre-shift time spent booting up their computers, logging into required computer networks and software applications, and reviewing work-related e-mails and other information at the start of their shift.

7. Defendants also failed to pay Plaintiffs and all similarly situated employees for their post-shift time spent shutting down, logging out of required computer networks and software applications, and reviewing work-related e-mails and other information at the end of their shift.

8. Finally, Defendants failed to compensate Plaintiffs and other AHCSRs for all of the mid-shift technical down time incurred due to problems with their computers, networks, programs/applications, and phones.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq*.

10. Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

11. Defendants' annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. Defendants' AHCSRs engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

12. This Court has jurisdiction over Plaintiffs' claims for violations of the New York Labor Law, which include violations for: NY CLS Labor § 191(d), Failure to Pay Agreed Upon Wages; 12 NYCRR § 142-2.2 Failure to Pay Overtime Wages; and 12 NYCRR § 142-2.4 Failure to Pay Spread of Hours Wages.

13. This Court has jurisdiction over Plaintiffs' state law claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which more than two-thirds of the proposed Class members are citizens of different states.

14.     A private party may also bring an action for damages for breach of contract under the common law.  Plaintiffs' breach of contract claims originate from the same facts that form the basis of their federal claims.  The court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

15.     This Court has personal jurisdiction over Defendants because they do business within the state of New York. Defendant Alpine is a corporate entity incorporated in the state of Delaware, but registered in the State of New York with the Department of State ID# 3461805. Defendant Sykes is headquartered and incorporated in the state of Florida, but it is registered to do business in the State of New York with the Department of State ID# 2053942.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants employ AHCSRs in this district, conducts business in this district, and a substantial portion of the events that give rise to the Plaintiffs' claims occurred in this district.

## PARTIES

17.     Plaintiff, Carol Morse, is a resident of Cortland, New York, and was employed by Defendants as an hourly AHCSR from approximately November 2013 to July 2015.  Ms. Morse signed a consent form to join this lawsuit, which is attached to this Complaint as *Exhibit A*.

18.     Plaintiff, Sandy Morowitz, is a resident of Boynton Beach, Florida, and was employed by Defendants as an hourly AHCSR from approximately October 2014 to March 2016.  Ms. Morowitz has signed a consent form to join this lawsuit, which is attached to this Complaint as *Exhibit B*.

19.     Plaintiff, Becky Nellos, is a resident of Quincy, Illinois, and has been employed by Defendants as an hourly AHCSR from approximately August 11, 2015 to present.  Ms. Nellos has signed a consent form to join this lawsuit, which is attached to this Complaint as *Exhibit C*.

20.     Defendant Alpine is a Delaware corporation that conducts business in New York with a registered office address of One Commerce Plaza, 99 Washington Ave #805A, Albany, New York, 12210.

21.     Defendant Sykes is a Florida corporation, that conducts business in New York with the same registered office address as Defendant Alpine, One Commerce Plaza, 99 Washington Ave #805A, Albany, New York, 12210.

22.     In 2012, Defendant Sykes acquired Defendant Alpine for approximately $150 million.

23.     Upon information and belief, at the time of the acquisition, Defendant Alpine employed approximately 5,000 people in 41 states.

24.     Defendants are joint employers of all potential Class members and, as such, are jointly and severally liable for any violations of the wage and hour laws set forth in this Complaint.  Defendants are also jointly and severally liable to Plaintiffs for breach of contract.

25.     Defendant Sykes website states that they are "a global leader in providing customer service, technical support and supplemental sales on behalf of our clients' brands, for their valued customers." See, http://www.sykes.com/unitedstates/about-sykes-jobs/ (last visited 1/19/17).

26.     Defendant Sykes' YouTube page states "as a Sykes Home employee, you'll have the proud distinction of joining the 6,000+ work-at-home employees who together are the new 'go-to' team in virtual customer service." See, https://www.youtube.com/user/alpineaccess/about (last visited 1/19/17).

27.     Defendant Sykes' website states "SYKES currently hires in 40 states across the United States." http://www.sykes.com/unitedstates/work-at-home/u-s-faq/ (last visited on 1/24/16).

28.     Defendant Alpine's website states "SYKES Home Powered by Alpine Access is a leader in the virtual contact center industry … [w]ith a workforce of 6,700 customer care professionals dispersed throughout the U.S. and Canada, this home-based customer contact solution supports more than 30 brands across 50 programs."

29.     Defendant Alpine's website states "SKYES' consolidation with Alpine Access was driven by our objective to provide increased versatility and expertise to our clients.  We've done this through SYKES Home Powered by Alpine Access, or SYKES Home."

## GENERAL ALLEGATIONS

30.     While employed by Defendants, Plaintiff, Carol Morse, was paid at a rate of $9.00 per hour; however, in 2014 she received a pay increase to $9.50 per hour.  At times, Plaintiff Morse was paid at a rate of $8.75.

31.     While employed by Defendants, Plaintiff, Sandy Morowitz, was paid at a rate of $8.00 per hour; however, in late 2014 she received a pay increase to $9.00 per hour.

32.     Plaintiff, Becky Nellos, was most recently paid $9.00 per hour.

33.     According to Defendant Sykes website "[i]n general, the average rate is about $9.00 per hour" for AHCSRs.   See  http://www.sykes.com/unitedstates/work-at-home/u-s-faq/ (last visited on 1/23/17).

34.     At the time this complaint was being drafted Defendants had three job postings that sought additional AHCSRs in New York.  The following job description was provided for all three postings:

> SYKES is looking for full-time Customer Service Representatives that want to work from the comfort of their own home! You might have heard about us on the radio or on TV and wondered what we do.
>
> When customers call their banks, healthcare provider, or cable company, they are actually calling SYKES. We help people by answering questions, processing transactions, and resolving their issues! We provide awesome customer service on behalf of the big companies you deal with every day.

See New York AHCSR job post, https://jobs.sykes.com/en-US/job/work-from-home-customer-service-representative/J3J0XH6H4PLYYL9VBP4 (last visited 1/19/17).

35.     Defendants also currently have a job posting for an AHCSR in Montgomery, Alabama. There, the job description was essentially identical to the job description in New York:

> SYKES is looking for full-time Customer Service Representatives that want to work from the comfort of their own home! You might have have driven past our building off of I-85 and Town Center Dr and wondered what we do.
>
> When customers call their banks, healthcare provider, or cable company, they are actually calling SYKES. We help people by answering questions, processing transactions, and resolving their issues! We provide awesome customer service on behalf of the big companies you deal with every day.

See Alabama AHCSR job post, https://jobs.sykes.com/en-US/job/customer-service-representative/J3H7ZG72406LC900ZF5 (last visited 1/19/17).

36.     Regardless of the geographic location in which the AHCSR worked, all of Defendants' AHCSRs used multiple computer networks, software programs, and applications in the course of their job. These programs and applications were an integral and an important part of the AHCSR's work and they could not perform their jobs without them.

37.     In regards to the job duties of an AHCSR, Defendants website states "[y]ou will be answering telephone calls from our clients' customers. Typically, those customers are calling to place orders for products or services, ask questions about those products or services, or to inquire about orders they have already placed." AHCSRs only received incoming calls and do

not do any outbound telemarketing.  See http://www.sykes.com/unitedstates/work-at-home/u-s-faq/ (last visited 1/23/17).

38.     According to Defendant Sykes' website, all AHCSRs are required to have the following minimum "home office essentials" in order to obtain employment with Defendants as a AHCSR: PC running Windows 7 & Windows 8.0 Windows 8.1 (Windows XP and Vista are not compatible with their programs); minimum of 20 GB free hard drive disk space; minimum of 2 GB RAM; 2.0 GHz Dual Core Processor required; monitor with minimum screen resolution of 1024x768; sound card and speakers to listen to audio files; current anti-virus software with updated definitions; current anti-spyware software; firewall installed and operating –or– Windows firewall turned on.   See https://www.sykes.com/unitedstates/work-at-home/home-office-essentials/ (last visited 1/19/17).

39.     Defendants' AHCSRs were required to meet the following internet access requirements: subscription to a reliable, high-speed, hard-wired, bi-directional internet connection, DSL or Cable; no satellite or wireless internet service; 3 Mbps downstream, or greater; 1 Mbps upstream, or greater; and Internet Explorer 8 or later.  It is also highly recommended that all AHCSRs have a home router with at least the following features: IP address routing, Network Address Translation (NAT), DHCP functions, Firewall functions, and LAN connectivity like a network switch.   See https://www.sykes.com/unitedstates/work-at-home/home-office-essentials/ (last visited 1/19/17).

40.     Defendants required that all AHCSRs meet the same set of detailed telephone line access requirements and headset requirements, regardless of what state they reside in. See https://www.sykes.com/unitedstates/work-at-home/home-office-essentials/ (last visited 1/19/17).

41.     In order to perform their job, Plaintiffs, and those similarly situated, were required to boot up and log in to various computer networks, software programs and applications, including those referenced above, in order to access information necessary to perform their job functions.  The pre-shift boot-up/log-in process took substantial time on a daily basis ranging from six (6) and eighteen (18) minutes per day, and even longer on days where Defendants' computer networks and programs were not working properly.

42.     However, Plaintiffs, and those similarly situated, were not actually "clocked in" for their shifts until after the computer boot-up/log-in process was complete, meaning that Plaintiff and all other AHCSRs worked at least six (6) and eighteen (18) minutes each shift for which they were never compensated.

43.     At some point, Defendant implemented a policy to, allegedly, pay AHCSRs for seven minutes of "commute time" at the beginning of each day only; however, this "commute time" did not commence until after the AHCSR had connected to the VPN and logged into Soft Phone.

44.     Upon information and belief, Defendant utilized various different time keeping programs, however, at all relevant times, Defendant compensated AHCSRs based upon the time kept by Soft Phone.

45.     The pre-shift off-the-clock time Plaintiffs and all other AHCSRs spent booting-up/logging-in to their computers directly benefited Defendants.

46.     The pre-shift boot-up/log-in process was an integral and indispensable part of Plaintiffs' job responsibilities as AHCSRs.

47.     Additionally, at the end of the day, Plaintiffs and all other AHCSRs were required to log-out of the time keeping system before they closed out and shut down their computers, which resulted in additional off-the-clock work.

48.     The post-shift work performed after the AHCSR disconnected from Defendants' network and logged out of the timekeeping system took between three (3) and five (5) minutes at the end of each shift.

49.     The post-shift off-the clock time Plaintiffs and all other AHCSRs spent logging-out/shutting-down directly benefited Defendants.

50.     The post-shift log-out/shut-down process was an integral and indispensable part of Plaintiffs' job responsibilities as AHCSRs.

51.     At all relevant times, Defendants controlled Plaintiffs' and all other AHCSRs' work schedule, duties, protocols, applications, assignments and employment conditions.

52.     Despite knowing Plaintiffs and other AHCSRs performed work before and after their scheduled shifts, Defendants and their managers failed to make any effort to stop or disallow this pre- and post-shift work and instead suffered and permitted it to happen.

53.     Defendants possess, control, and/or have access to information and electronic data indicating the times Plaintiffs and other AHCSRs booted up and logged into their computers and logged-out and shut-down each day and the time they logged into their telephone systems.

54.     Defendants possess, control, and/or have access to information and electronic data indicating the times Plaintiffs and other AHCSRs experienced technical down time.

55.     Despite their ability to track the amount of time Plaintiffs and other AHCSRs spent in connection with the pre-shift boot-up/log-in process and post-shift shut-down/log-out,

and technical downtime, Defendants failed to pay Plaintiffs and other AHCSRs for the off-the-clock work they performed each shift.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

56.    Pursuant to Defendants' policies, training, and direction, Plaintiffs and all other AHCSRs were required to start-up and log-in to various secure computer networks, software programs, and applications in order to access information. The pre-shift start-up and log-in process takes substantial time on a daily basis with said time ranging from six (6) to eighteen (18) minutes per day, or even longer when technical issues arise.  Before clocking in, Plaintiffs and each AHCSR were required to undertake the following essential work tasks in chronological order:

- First, AHCSRs were required to turn-on/warm-up their computer.  ***This process took between one (1) to two (2) minutes at the beginning of each shift***.

- Next, AHCSRs opened an application to access Defendants' Virtual Private Network (VPN), which required that they enter in a username and password. ***This generally took between one (1) to ten (10) minutes at the beginning of each shift***.

- After the AHCSR entered their username and password, and established a connection to Defendants' VPN, the AHCSRs were required to open up and log into "Citrix," which was the program used to assist Defendants' clients.  ***This step required another username and password, and generally takes the Plaintiffs and other AHCSRs an additional two (2) to three (3) minutes***.

- Next, AHCSRs were required to open up the "Soft Phone" program, enter a username and password, click on a link to obtain an access code, call into Defendants' system, enter the access code, and place themselves into a status that indicated that they were available to receive incoming calls from Defendant's clients. ***This process generally took an additional two (2) to three (3) minutes***.

57.    Defendant's AHCSRs completed the pre-shift process outlined above each shift. However, they were not actually "clocked in" for their shifts until *after* they started-up their computer, opened the essential VPN program/application, entered in their credentials (password

and username), established a connection to Defendant's VPN, opened up and logged into Citrix, completed the Soft Phone log-in process, and changed their status to "available" to take calls.

58.     Upon information and belief, pursuant to Defendants' compensation policies, Plaintiffs and other AHCSRs were only compensated for a maximum of seven (7) minutes of off-the-clock work ("commute time") for their entire shift.   As set forth herein, that seven minutes was never enough to cover all off-the-clock work performed by AHCSRs for pre-, mid-, and post-shift work activities.

59.     As a result, Plaintiffs and other AHCSRs spent between six (6) and eighteen (18) minutes at the beginning of each shift performing off-the-clock work for Defendants.

60.     The unpaid off-the-clock work performed prior to each shift by Plaintiffs and other AHCSRs directly benefitted Defendants, and the tasks undertaken in connection with the off-the-clock work was integral and indispensable to their job duties and responsibilities as AHCSRs.

**B.  Post-Shift Off-the-Clock Work**

61.     Pursuant to Defendants' policies, training and direction, Plaintiffs and all other AHCSRs were required to shut down and log-out of certain computer programs and applications they used during their shift after they logged-out of Defendants' timekeeping system.   The post-shift log-out and shutdown process took substantial time on a daily basis with said time ranging from three (3) to five (5) minutes per day.

62.     At the end of the day, after they removed themselves from  Avaya's "available" status and after they clocked out of Defendants' timekeeping system,  the Plaintiffs and other AHCSRs were required to complete the following essential work activities in chronological order:

- First, Plaintiffs and other AHCSRs were required to shut down Soft Phone, which made them unavailable to receive calls, but also took them off-the-clock. ***This step took less than a minute.***

- Next, the AHCSRs were required to log-out of Citrix, which prompted a waiting period as the program shut down. ***This process took between one (1) to two (2) minutes.***

- The AHCSRs then disconnected and closed down their connection to Defendants' VPN. ***This process took approximately one (1) minute.***

- Finally, the AHCSRs were required to shut-down/put-to-sleep their computers. ***This process took between one (1) to two (2) minutes***.

63. Pursuant to the above process, Defendants failed to pay Plaintiffs and other AHCSRs for between three (3) to five (5) minutes of off-the-clock work performed each shift.

64. The unpaid post-shift off-the-clock work performed by Plaintiffs and other AHCSRs at the end of each shift directly benefitted Defendants and the tasks undertaken in connection with the post-shift off-the-clock work were integral and indispensable to their job duties and responsibilities as AHCSRs.

### C. <u>Technical Malfunction (Down-Time) Spent Off-the-Clock</u>

65. In addition to the off-the-clock time spent during the start-up/log-in and shut-down/log-out procedures outlined herein, Plaintiffs and other AHCSRs frequently spent significant time waiting and assisting Defendants' technical support team in troubleshooting problems they encountered with the network and their computer systems and applications.

66. When Plaintiffs and other AHCSRs encountered technical difficulties with their networks, programs, phones, applications, and other programs they were required to change their status from "Available" and clock-out of Defendants' timekeeping system while they worked with the technical support team to correct the technical problems. This often required them to wait on hold for an appreciable amount of time.

67.     After the problem was corrected, Plaintiffs and Defendants' other AHCSRs were required to complete a work ticket that documented the technical issue. This form was also prepared off the clock. Although Plaintiffs and other AHCSRs were compensated for some tech down time, they were not paid for all time they spent working with Defendants' technical team to resolve technical problems.

68.     Additionally, Plaintiffs and other AHCSRs often lost their connection to Defendant's VPN or to Soft Phone, which required them to undertake the off-the-clock login process described herein. This frequently occurred when Plaintiffs and AHCSRs went on break and their systems became idle. However, these problems also occurred in the midst of performing tasks associated with taking calls from Defendants' clients.

69.     The mid-shift time spent off the clock directly benefitted Defendants', and was compensable time, and is an element of damages in this lawsuit.

70.     Upon information and belief, Defendants have records in their possession that will illustrate the time spent by Plaintiffs and other AHCSRs working with the technical support team to correct problems with their computers, phones, and programs/applications.

**D.  Exemplary Pay-Period to Illustrate Pre- and Post-Shift Compensation Deficiencies**

71.     An example of a specific workweek where Defendants failed to pay Plaintiff Carol Morse all overtime for hours worked in excess of 40 hours (as mandated by the FLSA and New York law) includes the following:

**Pay Period of 9/7/14 to 9/20/14**

- Plaintiff's paystub states that she worked 83.36 hours and was paid at a rate of $9.00 per hour for each hour of each workweek.

- Plaintiff's overtime rate was $13.50 per hour. Plaintiff received 4.76 hours of overtime, but no overtime pay for the time spent undertaking the pre- and post-shift activities described herein.

- With pre-shift time of 6-18 minutes per shift and post-shift time of 3-5 minutes per shift, Plaintiff should have been paid for an additional 40 to 115 minutes for each workweek at her overtime rate of $13.50 per hour and an additional amount for tech time if she experienced connectivity issues during this pay period.

- To the extent that Defendant paid Plaintiff and other AHCSRs seven minutes of "commute time," as set forth herein, the Plaintiff and other AHCSRs spent far more than seven minutes per shift performing off the clock work tasks. As such, for this pay period, Plaintiff is owed wages at her overtime rate for all additional unpaid hours.

*Exhibit D*, Morse Paystubs.

## Pay Period of 02/09/14 to 02/22/14

- Plaintiff worked 82.47 hours and was paid at a rate of $9.00 per hour for each hour of each workweek.

- Plaintiff's overtime rate was $13.50 per hour. Plaintiff received 2.47 hours of overtime, but no overtime pay for the time spent undertaking the pre- and post-shift activities described herein.

- With pre-shift time of 6-18 minutes per shift and post-shift time of 3-5 minutes per shift, Plaintiff should have been paid for an additional 40 to 115 minutes for each workweek at her overtime rate of $13.50 per hour and an additional amount for tech time if she experienced connectivity issues during this pay period.

- To the extent that Defendants paid Plaintiff and other AHCSRs seven minutes of "commute time," as set forth herein, the Plaintiff and other AHCSRs spent far more than seven minutes per shift performing off the clock work tasks. As such, for this pay period, Plaintiff is owed wages at her overtime rate for all additional unpaid hours.

*Exhibit D*, Morse Paystubs.

72.     An example of a specific workweek where Defendants failed to pay Plaintiff

Sandy Morowitz all overtime for hours worked in excess of 40 hours (as mandated by the FLSA

and New York law) includes the following:

## Pay Period of 12/14/14 to 12/27/14

- Plaintiff worked 89.89 hours and was paid at a rate of $8.00 per hour for each hour of each workweek.

- Plaintiff's overtime rate was $12.00 per hour. Plaintiff received 13.37 hours of overtime, but no overtime pay for the time spent undertaking the pre- and post-shift activities described herein.

- With pre-shift time of 6-18 minutes per shift and post-shift time of 3-5 minutes per shift, Plaintiff should have been paid for an additional 40 to 115 minutes for each workweek at her overtime rate of $13.50 per hour and an additional amount for tech time if she experienced connectivity issues during this pay period.

- To the extent that Defendants paid Plaintiff and other AHCSRs seven minutes of "commute time," as set forth herein, the Plaintiff and other AHCSRs spent far more than seven minutes per shift performing off the clock work tasks. As such, for this pay period, Plaintiff is owed wages at her overtime rate for all additional unpaid hours.

*Exhibit E*, Morowitz Paystubs

### Pay Period of 06/14/15 to 06/27/15

- Plaintiff worked 82.32 hours and was paid at a rate of $8.00 per hour for each hour of each workweek.

- Plaintiff's overtime rate was $12.00 per hour. Plaintiff received 2.32 hours of overtime, but no overtime pay for the time spent undertaking the pre- and post-shift activities described herein.

- With pre-shift time of 6-18 minutes per shift and post-shift time of 3-5 minutes per shift, Plaintiff should have been paid for an additional 40 to 115 minutes for each workweek at her overtime rate of $13.50 per hour and an additional amount for tech time if she experienced connectivity issues during this pay period.

- To the extent that Defendants paid Plaintiff and other AHCSRs seven minutes of "commute time," as set forth herein, the Plaintiff and other AHCSRs spent far more than seven minutes per shift performing off the clock work tasks. As such, for this pay period, Plaintiff is owed wages at her overtime rate for all additional unpaid hours.

*Exhibit E*, Morowitz Paystubs

### E. <u>Defendants Benefitted from the Uncompensated Off-the-Clock Work</u>

73.     At all relevant times, Defendants directed and directly benefited from the work performed by Plaintiffs and similarly situated employees in connection with the above described pre-, mid- and post-shift activities performed by Plaintiffs and other AHCSRs.

74.     At all relevant times, Defendants controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Plaintiffs and other AHCSRs.

75.     At all relevant times, Defendants were able to track the amount of time Plaintiffs and the other AHCSRs spent in connection with the pre-, mid- and post-shift activities however, Defendants failed to do so and failed to compensate Plaintiffs and other AHCSRs for the off-the-clock work they performed.

76.     At all relevant times, Plaintiffs and the AHCSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

77.     At all relevant times, Defendants used its attendance and adherence policies against Plaintiffs and the AHCSRs in order to pressure them into performing the pre-, mid- and post-shift off-the-clock work.

78.     Defendants expressly trained and instructed Plaintiffs and its other AHCSRs to perform the above-described pre-shift activities before clocking into Defendants' timekeeping system and their shift's scheduled start time to ensure they were prepared to take calls at the moment their shift began.

79.     At all relevant times, Defendants' policies and practices deprived Plaintiffs and the AHCSRs of wages owed for the pre-shift, mid-shift and post-shift activities they performed. Because Defendants' AHCSRs typically worked forty (40) hours or more in a workweek, Defendants' policies and practices also deprived them of overtime pay.

80.     Defendants knew or should have known that the time spent by Plaintiffs and its other AHCSRs in connection with the pre-, mid- and post-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendants to establish that they acted in good faith.

81. Unpaid wages related to the off-the-clock work described herein is owed to Plaintiffs at the FLSA mandated overtime premium of one-and-one-half the Plaintiffs' regular hourly rate because Plaintiffs regularly worked in excess of forty (40) hours in a workweek.

## COLLECTIVE ACTION ALLEGATIONS

82. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> *All current and former hourly at-home customer service representatives who worked for Sykes or Alpine Access at any time from February 27, 2014 through the date of judgment*

(hereinafter referred to as the "Class" or "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

83. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated AHCSRs.

84. Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons.

85. Consistent with Defendants' policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid for all premium overtime compensation when they worked beyond 40 hours in a workweek.

86. All of the work that Plaintiffs and the members of the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that the Plaintiffs and the FLSA Collective have performed.

87. As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to

Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek;

b. Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for hours worked off-the-clock;

c. Willfully failing to record all of the time that its employees, including Plaintiffs and the members of the FLSA Collective, have worked for the benefit of Defendants.

88. Defendants are aware or should have been aware that federal law required them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for all hours worked in excess of forty (40) per workweek.

89. Defendants' unlawful conduct has been widespread, repeated, and consistent.

90. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

91. The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift start-up/log-in time, time spent in connection with mid-shift connectivity issues, and the amount of post-shift log-out/shut-down time owed to each employee – does not vary substantially among the proposed FLSA Collective members.

92.     There are many similarly situated current and former AHCSRs who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

93.     This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. §216(b).

94.     Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendant's records.

95.     Plaintiffs estimate the putative Class, including both current and former employees over the relevant period, includes hundreds, if not thousands of members. The precise number of Class members should be readily available from a review of Defendants' personnel and payroll records.

## RULE 23 STATE LAW CLASS ACTION ALLEGATIONS

96.     Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on behalf of the following putative Classes (hereinafter the "Classes"):

**The New York Class is defined as follows:**

> *All current and former hourly at-home customer service representatives who worked for Sykes or Alpine Access in the State of New York at any time from February 27, 2011 through the date of judgment.*

**The Illinois Class is defined as follows:**

> *All current and former hourly at-home customer service representatives who worked for Sykes or Alpine Access in the State of Illinois at any time from February 27, 2014 through the date of judgment.*

(Plaintiffs reserve the right to amend the putative class definitions as necessary and to add additional State Classes should they become known after the filing of this Complaint.)

97.     Numerosity: The putative Class members from New York and Illinois are so numerous that joinder of all members in the case would be impracticable.

98.     Commonality/Predominance: There is a well-defined community of interest among Class members and common questions of *both* law and fact predominate in the action over any questions affecting individual members.  These common legal and factual questions, include, but are not limited to, the following:

    a.  Whether the pre-shift time the Rule 23 New York and Illinois Class members spend on start-up and log-in activities each shift is compensable time;

    b.  Whether the mid-shift time the Rule 23 New York and Illinois Class members spend on logging in or out of their computer during the workday and for time spent off-the-clock resolving technical issues (tech-time) during the workday is compensable time;

    c.  Whether the post-shift time the Rule 23 New York and Illinois Class members spend on start-up and log-in activities each shift is compensable time; and

    d.  Whether Defendant's non-payment of wages amount to a breach of contract with the Rule 23 New York and Illinois Class members.

99.     *Typicality*: Plaintiffs' claims are typical of claims of the Classes they seek to represent in that Plaintiffs and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices.  In each respective state, Plaintiffs' claims arise from Defendants' similar policies, practices, and course of conduct as all other Class members' claims and Plaintiffs' legal theories are based on the same or similar facts.

100.    *Adequacy*: :  Plaintiffs will fully and adequately protect the interests of the Classes and have retained national counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Classes.

101.    *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for

Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

102.     This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendants and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

103.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

104.     Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Classes and declaratory relief is appropriate in this case with respect to the Rule 23 Classes as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

105.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All current and former hourly at-home customer service*
> *representatives who worked for Sykes or Alpine Access at any time*
> *from February 27, 2014 through the date of judgment.*

(hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiffs reserve the right to amend this definition if necessary.

106.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical.  Plaintiffs reasonably estimate there are thousands of Rule 23 Nationwide Class members.  Rule 23 Nationwide Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

107.     There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual questions, include, but are not limited to, the following:

a.  Whether the pre-shift time Rule 23 Nationwide Class members spend on start-up and log-in activities each session is compensable time;

b.  Whether the post-shift time Rule 23 Nationwide Class members spend on shutdown and log-out activities is compensable time;

c.  Whether mid-shift time spent by the Rule 23 Nationwide Class members in connection with logging back into their computers after breaks, out of their computers to go on breaks, and for technical connectivity issues is compensable time; and

d.  Whether Defendants' non-payment of wages to the Rule 23 Nationwide Class members for all compensable time amounted to a breach of contract.

108.     Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices.  Plaintiffs' claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

109.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and they retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

110.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

111.    This case will be manageable as a Rule 23 Class action.  Plaintiffs and their counsel know of no unusual difficulties in this case and Defendants and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

112.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

113.    Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

114.     Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

115.     At all times relevant to this action, Defendants were joint employers under 29 U.S.C. § 203(d) of the FLSA and subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*. *See also* 29 C.F.R. § 791.2(b).

116.     At all times relevant to this action, Defendants engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

117.     At all times relevant to this action, Plaintiffs were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

118.     Plaintiffs and other FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

119.     Plaintiffs either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

120.     At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

121.     At all times relevant to this action, Defendants required Plaintiff and all the FLSA Collective members to perform nine (9) and twenty three (23) minutes of uncompensated pre-shift

work and post-shift work, per shift, and Defendants failed to pay these employees the federally mandated overtime compensation for all services performed.

122.    To the extent that at some point Defendants began paying Plaintiffs seven (7) minutes of commute time, as alleged in the preceding paragraph and throughout this complaint, that seven minutes was never sufficient to compensate Plaintiffs for all off-the-clock work performed, which ranged from nine (9) to twenty three (23) minutes per day.

123.    In addition to the time spent pre- and post-shift, Plaintiffs spent considerable time working off the clock each day logging-in-and-out of their computer networks and programs before and after breaks.  Plaintiffs also spent considerable time working off the clock during times that they were experiencing technical difficulties with their computers, programs, and networks. Defendant failed to compensate Plaintiffs for all mid-shift work tasks completed.

124.    The off-the-clock work performed every shift by Plaintiffs and the FLSA Collective was an essential part of their jobs, and these activities, and the time associated with these activities, was not *de minimis*.

125.    In workweeks where Plaintiffs and other Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable.  29 U.S.C. §207.

126.    Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have determined how long it took AHCSRs to perform their off-the-clock work. Further, Defendants could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

127.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II

## RULE 23 NATIONWIDE CLASS ACTION
## BREACH OF CONTRACT

128.    Plaintiffs re-allege and incorporates all previous paragraphs herein and further allege as follows.

129.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on behalf of Defendants.

130.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, had an hourly rate of approximately $8.00 to $10.00 per hour.

131.    Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendants' contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid off-the-clock work that was required of them in connection with pre-shift, technical down time, and post-shift work activities, described herein.

132.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-

clock work they performed, Defendants systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

133.     Plaintiffs' and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims).

134.     Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

135.     As a direct and proximate result of Defendants' contractual breaches, Plaintiffs and every other member of the Rule 23 National Class have been damaged, in an amount to be determined at trial.

136.     These claims are appropriate for class certification under Rule 23(b)(2) and (b)(3) because the law of contracts is substantially the same in New York as it is in the other states from which the Plaintiffs reside.

## COUNT III

## RULE 23 ILLINOIS CLASS ACTION:
## VIOLATIONS OF THE ILLINOIS MINIMUM WAGE LAW, § §820 ILCS 105/1, *et seq.*,

137.     Plaintiff, Becky Nellos, re-alleges and incorporates all previous paragraphs herein and further allege as follows.

138.     At all relevant times, Defendants were employers covered by the overtime and wage mandates of the Illinois Minimum Wage Law, §§ 820 ILCS 105/1, *et seq.*, and its attendant regulations (collectively referred to as the "IMWL"), and Plaintiff Becky Nellos and the Rule 23 Illinois Class are employees entitled to the protections of the IMWL.  § 820 ILCS 105/3.

139.    The IMWL entitles employees to compensation for every hour worked in a workweek. *Id.*

140.    The IMWL entitles employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of 40 hours per week. *See* § 820 ILCS 105/4a.

141.    Defendants violated the IMWL by regularly and repeatedly failing to compensate Plaintiff Becky Nellos and the Rule 23 Illinois Class for the time spent on the work activities described in this Complaint.

142.    As a result, Plaintiff Becky Nellos and the Rule 23 Illinois Class have and will continue to suffer loss of income and other damages.  Accordingly, Plaintiff Becky Nellos and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the IMWL at an amount to be proven at trial.

## COUNT IV

### RULE 23 NEW YORK CLASS ACTION: NY CLS LABOR § 191 – FAILURE TO PAY AGREED WAGES

143.    Plaintiff, Carol Morse, re-alleges and incorporates all previous paragraphs herein and further allege as follows.

144.    NY CLS Labor § 191(d) provides that a "clerical and other worker shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer."

145.    Plaintiff Carol Morse and Defendants' other AHCSRs meet the statutory definition of "clerical and other worker."  *See* NY CLS Labor § 190(7).

146. Defendants agreed to pay Plaintiff Carol Morse and other AHCSRs at a rate of $8.00 to $10.00 for each hour worked. Additionally, Defendant agreed to pay them one-and-one half their regular hourly rate for all hours worked in excess of 40 in a single workweek.

147. Defendants failed to pay Plaintiff Carol Morse and other AHCSRs as agreed because they did not pay them for all hours worked, specifically, Defendant failed to pay them for the time they spent performing the pre- and post-shift activities described herein.

148. A six (6) year statute of limitation applies to each such violation pursuant to NY CLS Labor § 198(3).

149. Defendants conduct and practice, described above, was and/or is willful, intentional, unreasonable, arbitrary and in bad faith.

150. As a result of the foregoing, Plaintiff Carol Morse and Defendants other AHCSRs were illegally deprived of agreed wages earned, in such amounts to be determined at trial, and are entitled to recovery of total unpaid amounts, liquidated damages, prejudgment interest, costs, and reasonable attorney's fees pursuant to NY CLS Labor § 198(1-a).

**COUNT V**

**RULE 23 NEW YORK CLASS ACTION:**
**12 NYCRR § 142-2.2 – FAILURE TO PAY OVERTIME WAGES**

151. Plaintiff, Carol Morse, re-alleges and incorporates all previous paragraphs herein and further allege as follows.

152. 12 NYCRR § 142-2.2 provides that "An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in" the FLSA.

153. Plaintiff Carol Morse and other AHCSRs worked over forty (40) hours in many weeks, as illustrated herein.

154.     Defendants failed to pay Plaintiff and other AHCSRs time and a half (1.5) of their regular hourly wages for all hours in a workweek in excess of forty (40).

155.     A six (6) year statute of limitation applies to each such violation pursuant to NY CLS Labor § 663(3).

156.     Defendants' conduct and practice, described above was and/or is willful, intentional, unreasonable, arbitrary and in bad faith.

157.     As result of the foregoing, Plaintiff Carol Morse and other AHCSRs were illegally deprived of overtime wages earned, in such amounts to be determined at trial, and is entitled to recovery of total unpaid amounts, liquidated damages, prejudgment interest, costs, and reasonable attorney's fees pursuant to NY CLS Labor § 663(1).

## COUNT VI

### RULE 23 NEW YORK CLASS ACTION: VIOLATIONS OF THE NEW YORK LABOR LAW, 12 NYCRR § 142-2.4 FAILURE TO PAY SPREAD OF HOURS

158.     Plaintiff Carol Morse re-alleges and incorporates all previous paragraphs herein and further allege as follows.

159.     At times, Plaintiff and other AHCSRs were paid by Defendants at the New York State minimum wage.

160.     Plaintiff Carol Morse and other AHCSRs worked shifts that exceeded 10 hours, but Defendants did not pay Plaintiff and other AHCSRs the "extra" hour of pay at the New York minimum wage he was due.

161.     12 NYCRR § 142-2.4 provides:

An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which:

(a) the spread of hours exceeds 10 hours; or
(b) there is a split shift; or
(c) both situations occur.

162. 12 NYCRR§ 142-2.18 states: "The spread of hours is the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty."

163. On some days, the interval between the beginning and end of Plaintiff's workday exceeded ten (10) hours.

164. Defendants never paid Plaintiffs an additional hour's pay at the New York minimum wage.

165. Defendants' conduct and practice, described above, was and/or is willful, intentional, unreasonable, arbitrary and in bad faith.

166. As a result of the foregoing, Plaintiff and other AHCSRs were illegally deprived of spread-of-hours and split-shift compensation earned, in such amounts to be determined at trial, and is entitled to recovery of total unpaid amounts, liquidated damages, prejudgment interest, costs, and reasonable attorney's fees pursuant to NY CLS § 663(1).

### COUNT VII

### RULE 23 NEW YORK CLASS ACTION:
### NY CLS LABOR § 652 - FAILURE TO PAY MINIMUM WAGES

167. Plaintiff, Carol Morse, re-alleges and incorporates all previous paragraphs herein and further allege as follows.

168. At times, Plaintiff, Carol Morse, and other AHCSRs were paid at exactly the New York State minimum wage. As such, when the off-the-clock work described herein is added to their hours, their hourly rate of pay to drops below the New York minimum wage.

169.   NY CLS Labor § 652 provides:

Every employer shall pay to each of its employees for each hour
worked a wage of not less than:
…
$8.00 on and after December 31, 2013,
$8.75 on and after December 31, 2014,
$9.00 on and after December 31, 2015….

170.   Defendants failed to pay Plaintiffs and other AHCSRs the New York State minimum wage for each hour of work they performed.

171.   A six (6) year statute of limitation applies to each such violation pursuant to NY CLS Labor § 663(3).

172.   Defendants' conduct and practice, described above, was and/or is willful, intentional, unreasonable, arbitrary and in bad faith.

173.   As a result of the foregoing, Plaintiff Carol Morse and other AHCSRs were illegally paid below the minimum wage and are entitled to damages, in such amounts to be determined at trial.  Plaintiff Carol Morse and other AHCSRs are entitled to recovery of total unpaid amounts, liquidated damages, prejudgment interest, costs, and reasonable attorney's fees pursuant to NY CLS § 663(1).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

a.     An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.     An Order certifying this action as a class action for the Rule 23 Nationwide Class pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract claim (Count II);

c.     An Order certifying this action as a class action for the Rule 23 Illinois Class pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's Illinois state wage and hour law claims (Count III), and certifying Plaintiff Becky Nellos as the Illinois Class representative;

d.      An Order certifying this action as a class action for the Rule 23 New York Class pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's New York state wage and hour law claims (Counts IV-VII), and certifying Plaintiff Carol Morse as the New York Class representative;

e.      An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and Rule 23 Nationwide Class members, and authorizing Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

f.      An Order designating the Plaintiffs as representatives of the FLSA collective action Class and the Rule 23 Nationwide Class; and undersigned counsel as Class counsel for the same;

g.      An Order declaring Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

h.      An Order declaring Defendants' violations of the FLSA were willful;

i.      An Order declaring Defendants breached their contracts with Plaintiffs and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

j.      An Order declaring Defendants violated the Illinois state wage and hour laws referenced herein;

k.      An Order declaring Defendants violated the New York state wage and hour laws referenced herein;

l.      An Order granting judgment in favor of Plaintiffs and against Defendants and awarding Plaintiffs, the collective action Class, the Rule 23 Nationwide Class, and the Rule 23 State Classes the full amount of damages and liquidated damages available by law;

m.      An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

n.      An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

o.      An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, Carol Morse, Becky Nellos, and Sandy Morowitz, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated: February 28, 2017                    Respectfully Submitted,


*/s* Jason T Brown                
**JTB LAW GROUP, LLC**
Jason T Brown (*NY Bar ID# 4389854*)
Jtb@jtblawgroup.com
Nicholas R Conlon (*NY Bar ID# 801616*)
Nicholasconlon@jtblawgroup.com
155 2nd Street, Suite 4
Jersey City, New Jersey 07302
(877) 561-0000 (office)
(855) 582-5297 (fax)

*Local Counsel for Plaintiff*


/s Kevin J. Stoops              
Kevin J. Stoops (MI Bar No. P64371)
Charles R. Ash, IV (MI Bar No. P73877)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
T: 248-355-0300
E: kstoops@sommerspc.com
E: crash@sommerspc.com


*Trial Counsel for Plaintiffs*