**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

CAROL MORSE and other similarly situated individuals,

                                    Plaintiffs,              5:17-cv-00235 (BKS/ATB)

v.

ALPINE ACCESS, INC., and SYKES ENTERPRISES,
INC., jointly and severally as,

                                    Defendants.

_____

**APPEARANCES:**

_For Plaintiff:_

Jason T. Brown
Nicholas R. Conlon
Zijian Guan
JTB Law Group, LLC
155 2nd Street, Suite 4
Jersey City, NJ 07302

Kevin J. Stoops
Charles R. Ash IV
Sommers Schwartz, P.C.
1 Towne Square, Suite 1700
Southfield, MI 48076

_For Defendants:_

Paul R. Piccigallo
Littler Mendelson, P.C.
290 Broadhollow Road, Suite 305
Melville, NY 11747

Jill M. Lowell
Littler Mendelson, P.C.
375 Woodcliff Drive, 2nd Floor
Fairport, NY 14450

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Carol Morse brings this putative collective and class action against Defendants Alpine Access, Inc. ("Alpine") and Sykes Enterprises, Inc. ("Sykes"), asserting claims pursuant to the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), the New York Codes, Rules and Regulations ("NYCRR"), and the Illinois Minimum Wage Law ("IMWL"), as well as breach of contract to recover unpaid wages, overtime compensation, and liquidated damages.[1] (Dkt. No. 1). Defendants now move to dismiss Count II (breach of contract), Count IV (failure to pay agreed wages under NYLL § 191), Count VI (failure to pay spread of hours under 12 NYCRR 142-2.4), and Count VII (failure to pay minimum wages under NYLL § 652) of Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 30).[2] For the reasons discussed below, Defendants' motion to dismiss is granted in part and denied in part.

## II.    FACTS[3]

Defendant Sykes is a company that provides customer service, technical support and supplemental sales for its business clients. (Dkt. No. 1, ¶ 25). It acquired Defendant Alpine, a "virtual contact center" company that provides "home-based customer contact solution[s]," in 2012. (*Id.* ¶¶ 22, 28). Defendants employed Plaintiff, a New York resident, from November 2013

---

[1] The action was initially brought by three named Plaintiffs: Carol Morse, Sandy Morowitz, and Becky Nellos. In June 2017, the Court denied Plaintiffs' motion for conditional certification of a collective action under the FLSA. (Dkt. No. 44). In November 2017, Defendants' motion to dismiss Sandy Morowitz' claims was granted. (Dkt. No. 62). Additionally, on January 3, 2018, the Court so-ordered the stipulation of dismissal with prejudice of Becky Nellos' claims. (*See* Dkt. No. 70).

[2] Defendants are not moving to dismiss claims under the FLSA (Count I), IMWL (Count III), or NYLL § 142-2.2 (Count V).

[3] The following allegations, which are taken from the Complaint and its attachments, are assumed to be true for purposes of this motion. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

2

to July 2015 as an hourly at-home customer service representative ("AHCSRs"). (*Id.* ¶¶ 2, 17–18). AHCSRs are Defendants' employees who work at home and answer telephone calls from customers who are calling to place orders or ask questions. (*Id.* ¶¶ 34–37). In order to perform her duties, Plaintiff was "required to boot up and log in to various computer networks, software programs, and applications." (*Id.* ¶ 41). Plaintiff's paid working time for each shift did not begin until the log-in process was complete. (*Id.* ¶ 42). The log-in process could take between six and eighteen minutes. (*Id.*). Only once logged in and connected to Defendants' virtual private network would a timekeeping system begin to track Plaintiff's shift time. (*Id.* ¶¶ 43–46).

At the end of the day, Plaintiff was "required to log-out of the time keeping system before [she] closed out and shut down [her] computer[]." (*Id.* ¶ 47). Plaintiff alleges that this post-shift work would take between three and five minutes per shift. (*Id.* ¶ 48). In addition to the unpaid log-in and log-out time, Plaintiff was also unpaid when she experienced technical difficulties. (*Id.* ¶ 65). When Plaintiff experienced technical malfunctions, she was "required to change [her] status from 'Available' and clock-out of Defendants' timekeeping system while [she] worked with the technical support team to correct the technical problems." (*Id.* ¶ 66). After the technical problems were corrected, Plaintiff needed to fill out forms documenting the issue. (*Id.* ¶ 67). Although Plaintiff was paid for some of the time spent resolving technical issues, she was not compensated for the entire time spent working with the technical team, documenting the incident, or logging back into the system. (*Id.* ¶¶ 67–68). Plaintiff asserts that all this time spent off the timekeeping system before, during, and after each shift "directly benefitted Defendants" and the tasks in connection with the unpaid work were "integral and indispensable to [her] job duties and responsibilities as [an] AHCSR[]." (*Id.* ¶¶ 45–46, 49–50, 69).

According to the Complaint, although Defendants knew of Plaintiff's unpaid work before, after, and during shifts, and had the ability to track the amount of time spent performing these unpaid tasks, Defendants failed to pay Plaintiff for the work performed while not logged into the timekeeping system. (*Id.* ¶¶ 52–55, 75). Defendants did pay Plaintiff for seven minutes of "commute time" for performing "off the clock work tasks." (*Id.* ¶¶ 43, 71). However, since Plaintiff spent a minimum of nine minutes per shift performing unpaid work tasks, on a day without any technical issues, the "commute time" payment was always insufficient. (*See id.* ¶¶ 71–72). Thus, Plaintiff alleges that she and other similarly situated AHCSRs are entitled to unpaid wages, overtime compensation, and liquidated damages for the unpaid pre-shift, post-shift, and mid-shift work performed. (*Id.* ¶ 79).

In Count II of the Complaint, Plaintiff alleges that Defendants breached contracts with Plaintiff and all AHCSRs part of the putative nationwide class by not paying them their contractually agreed-upon hourly rate for all of the work that they performed each shift. (*Id.* ¶¶ 129, 131–132). In Count IV, the Complaint states that Defendants failed to pay Plaintiff and other AHCSRs in New York for all hours worked in violation of NYLL § 191(d). (*Id.* ¶¶ 143–150). In Count VI, the Complaint asserts that Defendants failed to pay an extra hour of compensation owed to Plaintiff and other AHCSRs as required by 12 NYCRR 142-2.4. (*Id.* ¶¶ 158–166). Lastly, in Count VII, the Complaint alleges that Defendants failed to pay Plaintiff and other AHCSRs at the New York minimum wage for each hour of work performed. (*Id.* ¶¶ 167–173).

## III.  DISCUSSION

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The

plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.     Count II – Breach of Contract[4]

Plaintiff alleges that Defendant "had a binding and valid contract . . . to pay each employee for each hour [he or she] worked at a pre-established (contractual) regular hourly rate". (*Id.* ¶ 129). She has attached two earnings statements, from September and February 2014, showing an hourly rate of $9.00 per hour. (Dkt. No. 1-4, at 2–3). Per the Complaint, Defendants' failure to pay Plaintiff for all the time she actually worked in connection with each shift constitutes a breach of contract to pay Plaintiff for the work she performed, as well as a breach of the duty of good faith and fair dealing for failure to keep track of all hours worked. (*Id.* ¶¶ 132, 134). In their motion to dismiss, Defendants argue that Plaintiff does not plead sufficiently specific facts to state a claim for breach of contract. (Dkt. No. 30-1, at 7–8). They contend that Plaintiff "must plead and prove the terms of that contract, who, what, where and how the contract was created, describe the specific promise the Defendants failed to keep, and how Plaintiff[] [was] damaged as a result." (*Id.* at 8).

---

[4] The parties appear to proceed on the assumption that New York law applies to Plaintiff's breach of contract claim. (Dkt. No. 30-1, at 3; Dkt. No. 41, at 6). Thus, for the purposes of this motion, the Court assumes, without deciding, that New York law applies. *See Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001) ("The parties' briefs assume that New York substantive law governs the issues of contract interpretation and statute of limitations presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law.").

To state a claim for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the agreement by one party, (3) breach of the agreement by the other party, and (4) damages. *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir. 1996). Plaintiff has plausibly pled all four elements: first, as alleged, Defendants agreed to pay Plaintiff an hourly wage in exchange for Plaintiff's performance of AHCRS job duties; second, Plaintiff performed the bargained-for work for Defendants, including the required pre-shift, post-shift, and mid-shift work to be able to complete her job duties; third, Defendants breached the agreement when they failed to pay Plaintiff for the entirety of her time worked; and fourth, Plaintiffs has suffered resulting damages in the form of unpaid (or underpaid) wages and overtime compensation. (Dkt. No. 1, ¶¶ 30–32, 46, 50, 66–69, 128–136). Plaintiff may not have offered specific contract details at this stage, but, on a motion to dismiss, "it is not necessary for each detail of a contract to be pleaded individually, so long as plaintiff has submitted a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Kaplan v. Aspen Knolls Corp.*, 290 F. Supp. 2d 335, 338 (E.D.N.Y. 2003). The allegations in the Complaint are sufficient to give rise to a breach of contract claim. *See Wilk v. VIP Health Care Servs., Inc.*, No. 10-cv-5530, 2012 WL 560738, at *3–4, 2012 U.S. Dist. LEXIS 21630, at *10–13 (E.D.N.Y. Feb. 21, 2012) (finding that the plaintiff sufficiently pled breach of contract by alleging that she had entered into an agreement to perform work for her employer at a specified hourly rate, that she performed the work as agreed, that her employer failed to pay the agreed-upon wages, and that she suffered damages as a result). Accordingly, Defendants' request to dismiss Count II is denied.

**B.      Count IV – Failure to Pay Agreed Wages Under NYLL § 191(d)**

Section 191 of the NYLL is entitled "Frequency of Payments." Section 191(d) provides that "clerical and other worker[s] shall be paid the wages earned in accordance with the agreed

6

terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." N.Y. Lab. Law § 191(d). Defendants note that "many courts" have held that this provision governs untimely payments, and that it does not provide a cause of action for failure to pay wages above the statutory minimum. (Dkt. No. 41, at 10). Plaintiff has not cited any case law that directly addresses the question.[5] (*See* Dkt. No. 40, at 11 (citing *Gordon v. Kaleida Health*, 299 F.R.D. 380, 389 (W.D.N.Y. 2014) (assuming that there could be recovery for unpaid wages under § 191)). The Second Circuit has noted that "Labor Law § 191 by its terms only involves the timeliness of wage payments, and does not appear to afford to plaintiffs any substantive entitlement to a *particular* wage." *Myers v. Hertz Corp.*, 624 F.3d 537, 545 (2d Cir. 2010); *see Jara v. Strong Steel Door, Inc.*, No. 14643/05, 2008 WL 3823769, at *11–12, 2008 NYLJ LEXIS 1968, at *30 (N.Y. Sup. Ct. Aug. 15, 2008) (dismissing cause of action brought under § 191 when it "does not allege a frequency of payment violation, and observing that, "[t]o the extent that prevailing wages are sought to be recovered, Labor Law § 191 is an inappropriate vehicle for such recovery"). "Courts have held that this section is 'an inappropriate vehicle for . . . recovery' where 'the gravamen of plaintiffs' complaint is that the sums paid were not equal to what plaintiffs claim they were entitled to receive,' and the plaintiff has not

---

[5] Plaintiff references a December 21, 2016 report and recommendation, which observed that "a variety of NYLL sections" allow recovery of unpaid regular time (also known as "straight time" or "gap time"), as distinguished from overtime. *Soto v. Armstrong Realty Mgmt. Corp.*, No. 15-cv-9283, 2016 WL 7396687, at *2, 2016 U.S. Dist. LEXIS 176740, at *4–5 (S.D.N.Y. Dec. 21, 2016), *report and recommendation adopted*, 2017 WL 2191625, 2017 U.S. Dist. LEXIS 75273 (S.D.N.Y. May 17, 2017). For that proposition, the report and recommendation cited a number of cases, including three involving NYLL § 191; those three cases, however, did not address § 191's apparent textual limitation to frequency-of-payment claims. *See id.* (citing cases). The report and recommendation did not address the Second Circuit's view of § 191 in *Myers*. *See id.* Plaintiff also relies on *Shoots v. iQor Holdings US Inc.*, No. 15-cv-563, 2015 WL 6150862, at *8, 2015 U.S. Dist. LEXIS 141617, at *24–25 (D. Minn. Oct. 19, 2015), where the district court, applying New York law, acknowledged the narrow construction placed on § 191 but nevertheless allowed the gap-time claim to proceed because the employment contracts at issue "support[ed] an independent basis for their claims under New York law." Since Count IV bases the gap-time claim on NYLL § 191 only, the Court declines to consider whether other provisions of the NYLL apply in this case. Plaintiff may rectify pleading deficiencies by amending her Complaint. *See infra* Part IV.

otherwise pleaded that payments were untimely." *Kone v. Joy Constr. Corp.*, No. 15-cv-1328, 2016 WL 866349, at *4, 2016 U.S. Dist. LEXIS 26981, at *13 (S.D.N.Y. Mar. 3, 2016).

Defendants move to dismiss Plaintiff's claim under NYLL § 191(d) on the ground that "the conclusory and formulaic assertion[s] in [the] Complaint" are insufficient to state a claim. (Dkt. No. 30-1, at 9). The Court agrees that Plaintiff has failed to state a claim under NYLL § 191(d). The Complaint does not allege a frequency of payment violation; it states that Defendants did not pay Plaintiff and other AHCSRs the agreed-upon compensation "for all hours worked, specifically, Defendant failed to pay them for the time they spent performing the pre- and post-shift activities" in violation of NYLL § 191(d). (Dkt. No. 1, ¶¶ 143–50). The Complaint adds that "Defendants agreed to pay Plaintiff Morse and other AHCSRs at a rate of $8.00 to $10.00 for each hour worked." (*Id.* ¶ 146). Even if Plaintiff's allegations are true, the heart of Plaintiff's grievance is that "the sums paid were not equal to what [Plaintiff] claim[s] [she and other AHCSRs] were entitled to receive," not that "payments were untimely." *Kone*, 2016 WL 866349, at *4, 2016 U.S. Dist. LEXIS 26981, at *13. Indeed, there is no suggestion in the Complaint that Defendants paid Plaintiff in an untimely manner. Since these allegations are insufficient to state a claim under NYLL § 191(d), Defendants' request to dismiss Count IV is granted.

### C.     Count VI – Failure to Pay Spread of Hours Under 12 NYCRR 142-2.4

Under New York law, "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which the spread of hours exceeds 10 hours." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4. The term "spread of hours" refers to the amount of time "between the beginning and end of an employee's workday . . . includ[ing] working time plus time off for meals plus intervals off duty." *Guaman v. J & C Top Fashion, Inc.*, No. 14-cv-8143, 2016 WL 791230, at *5, 2016 U.S. Dist. LEXIS

22095, at *13 (S.D.N.Y. Feb. 22, 2016) (alteration in original) (quoting *Inclan v. N. Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 502 (S.D.N.Y. 2015)). "By its plain language, section 142-2.4(a) only provides supplemental wages to workers who are paid the minimum wage required under New York law. It does not ensure additional compensation to employees whose wages sufficiently exceed that floor." *Espinosa v. Delgado Travel Agency, Inc.*, No. 05-cv-6917, 2007 WL 656271, at *2, 2007 U.S. Dist. LEXIS 15149, at *7–8 (S.D.N.Y. Mar. 2, 2007); *see also Williams v. Tri-State Biodiesel, LLC*, No. 13-cv-5041, 2015 WL 305362, at *16, 2015 U.S. Dist. LEXIS 7926, at *43 (S.D.N.Y. Jan. 23, 2015) ("[R]ecent case law has been nearly unanimous that the spread-of-hours requirement extends only to workers paid at the minimum-wage level.").

According to the Complaint, Plaintiff was employed by Defendants from November 2013 to July 2015. (Dkt. No. 1, ¶ 17). During her employment, Plaintiff "was paid at a rate of $9.00 per hour," but "in 2014 she received a pay increase to $9.50 per hour," and "[a]t times, Plaintiff Morse was paid at a rate of $8.75." (*Id.* ¶ 30). Defendants move to dismiss the spread-of-hour claim, noting that "New York's minimum wage was, at its highest, $8.75 per hour during the time of Plaintiff Morse's alleged employment"; further, Defendants argue that the allegation that "[a]t times" Plaintiff Morse was paid $8.75 per hour is "exceedingly vague." (Dkt. No. 30-1, at 11–12). The Court agrees that the claim is insufficiently pled. The New York State hourly minimum wage was $7.25 in 2013, $8.00 in 2014, and $8.75 in 2015.[6] Plaintiff, however, does not allege *when* she was paid a rate of $8.75 per hour. Even taking her allegations as true, the Court cannot infer that Plaintiff was ever paid minimum wage during her employment with

---

[6] The minimum wage rates are promulgated by the New York State Department of Labor. *See History of the General Hourly Minimum Wage in New York State*, New York State Dep't of Labor, https://labor.ny.gov/stats/minimum_wage.shtm (last visited Mar. 30, 2018). The Court takes judicial notice of these official rates. *See Phillips v. County of Orange*, 894 F. Supp. 2d 345, 388 n.39 (S.D.N.Y. 2012) ("The Court may take judicial notice of these state agency-promulgated guidelines in deciding a motion to dismiss.").

Defendants and thus entitled to spread-of-hours pay.[7] *See Guaman*, 2016 WL 791230, at *6,

2016 U.S. Dist. LEXIS 22095, at *14. Count VI must therefore be dismissed.

### D.    Count VII – Failure to Pay Minimum Wage Under NYLL § 652

"In an action to recover unpaid wages under the NYLL, a plaintiff must show that (1) he

[or she] was an 'employee' as defined by the statute; (2) the defendant was his [or her]

'employer' as defined by the statute; and (3) he [or she] was paid a wage of less than the

applicable statutory minimum wage for each hour worked."[8] *Oram v. SoulCycle LLC*, 979 F.

Supp. 2d 498, 505–06 (S.D.N.Y. 2013) (citing N.Y. Lab. Law § 652). The NYLL does not

require hourly pay, but only that the total wage paid to an employee divided by the total hours

worked by that employee is greater than or equal to the minimum wage. *See id.* at 506. "A party

alleging failure to pay the mandated minimum wage has an 'arithmetical' burden at the pleadings

stage." *Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*, No. 16-cv-541,

2016 WL 7243541, at *6, 2016 U.S. Dist. LEXIS 172767, at *20 (E.D.N.Y. Dec. 12, 2016).

The Complaint alleges that, "[a]t times, Plaintiff . . . and other AHCSRs were paid at

exactly the New York State minimum wage" and, as a result, "when the off-the-clock work . . . is

added to their hours, their hourly rate of pay to [sic] drops below the New York minimum

wage." (Dkt. No. 1, ¶ 168). The statement that Plaintiff was paid at "exactly" the minimum wage

contradicts the allegation that she received $9.00 per hour during her employment and obtained a

pay increase to $9.50 per hour in 2014, (*see id.* ¶ 30)—rates that are above the New York

minimum wage for the relevant period. And while the statement could be consistent with the

allegation that Plaintiff was "[a]t times" paid $8.75 per hour, as discussed above, such an

---

[7] In her opposition, Plaintiff entertains a hypothetical scenario, in which her "weekly non-overtime earnings *would* amount to . . . less than the minimum wage" in 2015 "*if* [she] was paid" a certain rate and worked for a certain number of hours spread over shifts of a certain duration over a certain number of days. (*See* Dkt. No. 40, at 17 (emphasis added)). Such a hypothetical, even if it had been included in the Complaint, would be the type of speculative allegation that fails to satisfy the *Twombly/Iqbal* standard.
[8] The parties only dispute the third element. (*See* Dkt. No. 30-1, at 9–11; Dkt. No. 40, at 12–15).

allegation is too vague to pass muster even at the pleading stage, since there is no indication that Plaintiff was paid $8.75 per hour in 2015, the year when the effective New York minimum wage was $8.75 per hour.

Moreover, the Complaint does not lay out the "arithmetical" basis for concluding that the real hourly rate received by Plaintiff was below the New York minimum wage.[9] Plaintiff does not set forth the nominal hourly rate she was paid in weeks when her real hourly rate was below the New York minimum wage, how many hours she worked in those weeks, and what the effective New York minimum wage was at the time. *See Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 466 (E.D.N.Y. 2015) (explaining that the proper method to calculate a plaintiff's rate of pay under the FLSA and the NYLL for minimum-wage purposes is to divide his or her total remuneration by the number of hours actually worked in a given week); *cf. Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 402 (E.D.N.Y. 2015) (stating that, with regard to an FLSA minimum wage claim, "it is sufficient for a plaintiff to allege facts about her salary and working hours, such that a simple arithmetical calculation can be used to determine the amount owed per pay period" (quoting *Serrano v. I. Hardware Distribs., Inc.*, No. 14-cv-2488, 2015 WL 4528170, at *3, 2015 U.S. Dist. LEXIS 97876, at *6 (S.D.N.Y. July 27, 2015))). Without those data points, the Court is only left with Plaintiff's conclusory allegations that Defendants failed to pay her the minimum wage—allegations that are insufficient to state a claim under NYLL § 652. *Cf. Gomez*

---

[9] In her opposition, Plaintiff characterizes Count VII as a "gap-time claim." (Dkt. No. 40, at 12–13). But as Defendants correctly note, (*see* Dkt. No. 41, at 11), a "gap-time claim is one in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013). Count VII, by contrast, asserts a minimum wage claim—that Defendants failed to pay Plaintiff and other AHCSRs the New York minimum wage in violation of NYLL § 652 because, "when the off-the-clock work . . . is added to their hours, their hourly rate of pay to [sic] drops below the New York minimum wage." (Dkt. No. 1, ¶ 168). To the extent Plaintiff attempts to amend her minimum wage claim and recast it as a gap-time claim through her opposition brief, she cannot do so. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir.1998) (recognizing that a party may not use an opposition to a dispositive motion as a means to amend a complaint).

*v. El Rancho de Andres Carne de Tres Inc.*, No. 12-cv-1264, 2014 WL 1310296, at *4–5, 2014 U.S. Dist. LEXIS 45580, at *9, *13 (E.D.N.Y. Mar. 11, 2014) (noting that the NYLL "mirrors the FLSA in compensation provisions regarding minimum hourly wages," while pointing out that, to state "a plausible FLSA claim," a plaintiff "must provide more detail than the conclusory statement that defendants failed to pay him the minimum wage"). The Court accordingly grants Defendants' motion to dismiss Count VII.

## IV.     LEAVE TO AMEND

Defendants seek dismissal of the Complaint with prejudice. (Dkt. No. 30, at 1–2). In general, "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). The Court will permit Plaintiff a limited opportunity to amend the Complaint in accordance with this decision.

## V.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 30) is **GRANTED** as to Count IV, Count VI, and Count VII of the Complaint (Dkt. No. 1), but otherwise **DENIED**; and it is further

**ORDERED** that Count IV, Count VI, and Count VII of the Complaint (Dkt. No. 1) are **DISMISSED without prejudice**; and it is further

**ORDERED** that Plaintiff **may amend the Complaint <u>within THIRTY (30) days</u>** of the date of this Order, in accordance with the conclusions stated above.

**IT IS SO ORDERED.**

Dated: March 30, 2018
      Syracuse, New York

Brenda K. Sannes
U.S. District Judge